**[J-42-2017][M.O. – Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| DEREK SMITH, | : | No. 82 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated 2/23/16 at |
| | : | No. 1007 CD 2015 vacating the order of |
| | : | the Pennsylvania Board of Probation |
| v. | : | and Parole dated 5/21/15 at no. 7679-0 |
| | : | and remanding |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| | : | |
| Appellant | : | ARGUED:  May 10, 2017 |

**DISSENTING OPINION**

**CHIEF JUSTICE SAYLOR**            **DECIDED:  October 18, 2017**

The subject of credit for time served is a difficult one, in that the matter would seem to be most suitable to close regulation by the political branch; however, in the absence of specific legislative development, the treatment has fallen largely to the courts.  *See Commonwealth v. Martin*, 576 Pa. 588, 594, 840 A.2d 299, 302 (2003) (observing that "the General Assembly . . . has not addressed the permutations that arise when applying credit for time served in the parole revocation context."). Unfortunately, incompletely theorized and developed opinions such as *Gaito v. PBPP*, 488 Pa. 397, 412 A.2d 568 (1980), reflect the announcement and perpetuation of bright-line rules against a complex landscape in which the doctrine may be inconsistent with the interests of fairness and justice.  *See generally Martin*, 576 Pa. at 599-600, 840

A.2d at 305 (elaborating upon some of the shortcomings of *Gaito*).[1]  Although there are instances in the past in which the Court has adhered to *per se* rules even in circumstances that were not anticipated, it has also explained that:

> It is axiomatic, of course, that once a judicially created rule is promulgated, the common law system requires that appellate courts consider this rule in its various factual guises and expand or contract the rule as justice requires.

*Commonwealth v. Henderson*, 616 Pa. 277, 287, 47 A.3d 797, 803 (2012) (quoting *Commonwealth v. Mason*, 535 Pa. 560, 568, 637 A.2d 251, 255 (1993)).

I would follow the latter approach here and adhere to the Commonwealth Court's essential treatment.  *Gaito* certainly did not anticipate the resource-related and fiscal issues that attend the channeling of credit for time served away from the state system in which an inmate is physically housed and effectively diverting it to a federal sentence. Although the doctrine of primary jurisdiction and Section 6138(a)(5.1) of the Prisons & Parole Code may not directly answer the question presented here, their policy implications are consistent with the intermediate court's holding, and I simply would not

---

[1] In fact, given *Martin*'s exposition of the various difficulties attendant in *Gaito*'s rationale, I would be receptive to reconsidering that decision in an appropriate case, particularly as most other states have adopted a rule opposite that of *Gaito*.  *See State v. Aubuchon*, 90 A.3d 914, 923 (Vt. 2014); *People v. Idziak*, 773 N.W.2d 616, 624 (Mich. 2009); *Jenkins v. State*, 49 P.3d 1028 (Wyo. 2002); *Ali v. Dist. of Columbia*, 612 A.2d 228 (D.C. 1992); *In re Joyner*, 769 P.2d 967 (Cal. 1989); *Watts v. Comm'r of Correction*, 679 N.E.2d 1019, 1020 (Mass. Ct. App. 1997); *State v. Harvey*, 642 A.2d 1052, 1053 (N.J. Super. 1994).  This contrary approach might better ensure that time spent in pre-trial custody is allocated to some sentence, as opposed to the current regime, under which *Martin* is being "limited to the allocation of *excess* pre-sentence confinement credit."  *Armbruster v. PBPP*, 919 A.2d 348, 355 (Pa. Cmwlth. 2007).  In the absence of targeted advocacy directly challenging the continued precedential effect of *Gaito*, however, I do not view this case as an appropriate vehicle for reconsidering the decision.  Rather, I appreciate that we are presently relegated to addressing the decision's appropriate reach.

construe *Gaito* as foreclosing the Commonwealth from allocating time spent in state institutions to state (as opposed to federal) sentences. By taking the opposite approach -- and extending *Gaito* to the present factual circumstances which were never contemplated there -- the majority relegates the Commonwealth penal system to accommodating prisoners for longer periods of time than reflected in their state terms of sentence. The result is to require the state system to absorb the attendant costs and other burdens while being used, effectively, as a proxy for federal custody.

Finally, relative to the majority's discussion of the *per curiam* order in *Melhorn v. PBPP*, 589 Pa. 250, 908 A.2d 266 (2006), I observe that I noted my dissent to that order. *See id.* In any event, *per curiam* orders do not serve as precedent, *see, e.g., Heim v. MCARE Fund,* 611 Pa. 1, 9, 23 A.3d 506, 510 (2011), which should be grounded on developed reasoning.

For the above reasons, I respectfully dissent.