**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1240
_____

LENNY ROSS,
Appellant

v.

ADMINISTRATOR EAST JERSEY STATE PRISON;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:19-cv-06595)
District Judge:  Honorable Noel L. Hillman
_____

Argued: January 17, 2024
_____

Before:  HARDIMAN, MATEY, and PHIPPS, *Circuit Judges*

(Filed: September 30, 2024)
_____

Steven D. Altman
Philip Nettl          **[ARGUED]**
BENEDICT ALTMAN AND NETTL
247 Livingston Avenue
New Brunswick, NJ 08901

*Counsel for Appellant*

Linda A. Shashoua   **[ARGUED]**
John J. Santoliquido
ATLANTIC COUNTY OFFICE OF PROSECUTOR
4997 Unami Boulevard
P.O. Box 2002
Mays Landing, NJ 08330

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

PHIPPS, *Circuit Judge*.

The Appellate Division of the New Jersey Superior Court provides two options for appealing a criminal conviction: a plenary appeal or an expedited challenge to the sentence. After his conviction and sentencing, a criminal defendant twice instructed his attorney to file a plenary appeal, but his intake appellate counsel instead designated the appeal for the expedited sentence-review track. That appeal was unsuccessful. So were the defendant's post-conviction collateral challenges in state court as well as his § 2254 petition for habeas relief in District Court. While those challenges raised claims of ineffective assistance of counsel, only his Rule 60(b) motion following the District Court's rejection of the habeas petition presented a claim related to the initial placement of the direct appeal on the expedited sentencing

2

calendar. Pursuing that claim for the first time so late in the process is fatal to its success, and for the reasons below, we will affirm the orders of the District Court denying the petition and the Rule 60(b) motion.

## I. BACKGROUND

### A. Ross's Conviction for Aggravated Manslaughter and His Resulting Thirty-Year Prison Sentence

In 2011, Lenny Ross, Jr., worked as a drug dealer, and he set out on Christmas Eve to sell $225 in heroin to one of his clients, Steven Gurss, in Pleasantville, New Jersey. Gurss arrived in a silver Dodge pickup truck, and, according to Ross, Gurss took the drugs without paying for them. Ross then shot him in the head with a Glock 19, and Gurss died on Christmas.[1]

In November 2012, Ross was indicted in the Law Division of the Superior Court of New Jersey in Atlantic County on charges of the first-degree murder of Gurss as well as ten other crimes related to drugs or guns. *See* N.J. Stat. Ann. §§ 2C:11-3(a)(1), (2). In January 2014, after a jury was empaneled, Ross decided to plead guilty to one count of aggravated manslaughter, and the prosecutor dropped the other charges. A few weeks later, before sentencing, Ross changed his mind and moved to withdraw his guilty plea. The trial judge denied that motion and then sentenced Ross to thirty years' imprisonment and five years' supervised release.

---

[1] According to Ross, once Gurss received the heroin, "he sped off in his truck [and] he almost ran [Ross] over," Guilty Plea Hr'g Tr. 8:19–20 (App. 283), and Ross responded by firing a single shot toward the truck, which struck and killed Gurss. But forensic evidence suggested that Ross shot Gurss in the side of the head at point-blank range.

## B. The Appellate Options for Criminal Defendants in New Jersey

New Jersey provides two tracks for criminal appeals. *See* N.J. Ct. R. 2:3-2. The first is the standard plenary process that allows for ordinary appellate review of all disputed issues. *See State v. Robinson*, 974 A.2d 1057, 1068–69 (N.J. 2009). The second is an opt-in alternative that provides an expedited review of challenges to sentences by placing the appeal on the calendar for Excessive Sentence Oral Argument, or 'ESOA' for short. *See* N.J. Ct. R. 2:9-11; *State v. Bianco*, 511 A.2d 600, 603–04, 606, 608 (N.J. 1986). Once an appeal is placed on the ESOA calendar, it is usually decided without briefing, based on only oral argument. *See* N.J. Ct. R. 2:9-11; *see, e.g.*, *Bianco*, 511 A.2d at 602–03.

The initial requirements for both appellate tracks are the same. In addition to a notice of appeal, a prospective appellant must file a case information statement. *See* N.J. Ct. R. 2:5-1(a)(3). The template in New Jersey's appellate rules for the case information statement requires information about the parties and their attorneys, the facts of the case, and the disposition below. *See* N.J. Ct. R. 2:5-1(h)(1); N.J. Ct. R. App'x VIII. In addition, the case-information-statement template asks whether the only issues on appeal relate to sentencing:

> Will the issue(s) in this appeal involve only whether the trial court imposed a proper sentence? If so, briefs shall not be filed without leave of court.

N.J. Ct. R. App'x VIII (citing N.J. Ct. R. 2:9-11). Next to that question, the template contains boxes for the filer to check 'yes' or 'no.' *Id.* The Appellate Division uses the response to that question to determine whether the appeal should be placed on the plenary calendar or the ESOA calendar.

The placement of a case on the ESOA calendar does not necessarily limit the appeal to only sentencing challenges. An ESOA panel may transfer a case to the plenary calendar "at its discretion." N.J. Ct. R. 2:9-11; *see, e.g.*, *State v. Walters*, 139 A.3d 1214, 1216 n.1 (N.J. Super. Ct. App. Div. 2016). And ESOA panels may allow oral argument on additional topics. *See, e.g.*, *State v. Marshall*, 2022 WL 1160968, at *2 (N.J. Super. Ct. App. Div. Apr. 20, 2022) (recounting that the ESOA panel had heard oral argument on a motion to withdraw a guilty plea and remanded the case on that issue); *see also Cabrera v. Barbo*, 175 F.3d 307, 308 (3d Cir. 1999) (describing an ESOA panel's remand order that allowed consideration of non-sentencing issues).

### C. The Placement of Ross's Direct Appeal on the ESOA Calendar

After receiving the thirty-year prison sentence, Ross twice requested that his counsel file a plenary appeal. On his appeal request form, the box for a plenary appeal – not the box for an ESOA appeal – was checked. His transmittal-of-adult-appeal form also indicated a request for a full appeal.

Despite Ross's requests for a plenary appeal, the intake appellate counsel who filed the case information statement checked the 'yes' box in response to the ESOA question. Ross's appeal was then placed on the ESOA calendar.

After he discovered that, Ross moved *pro se* for the ESOA panel to exercise its discretion and transfer his case to the plenary calendar. But the two-judge ESOA panel did not do so, and the appeal proceeded to oral argument without briefing.

At oral argument, a different court-appointed attorney represented Ross. She reminded the panel of Ross's *pro se* motion and that Ross was asking that his appeal "be moved to the plenary calendar rather than just be reviewed by [the ESOA panel]." ESOA Oral Arg. Tr. 5:7–9 (App. 309). She also raised non-sentencing challenges by arguing that Ross "maintained

his innocence" and "felt pressured into entering the guilty plea." *Id.* 2:16–18 (App. 306). In addition, that attorney used oral argument to attack Ross's sentence by arguing that it was "excessive" and that Ross "didn't have to get the 30 years." *Id.* 4:22–24 (App. 308).

The prosecutor did not address the request to transfer the case to the plenary calendar but did oppose the other arguments. She asserted that "there was no colorable claim of innocence" and that Ross "readily admitted that he killed the victim because he tried to take off without paying the full amount for drugs." *Id.* 5:20–24 (App. 309). She also emphasized the timing – that the "plea agreement . . . took place on the day after a jury was picked" – for the proposition that Ross did "not provide a strong basis for withdrawal of his guilty plea." *Id.* 6:9–10, 15–17 (App. 310). Finally, the prosecutor defended the reasonableness of Ross's thirty-year sentence in light of his criminal history.

The ESOA panel declined to transfer the case to the plenary calendar and instead affirmed Ross's sentence in a one-paragraph summary order. Ross then petitioned unsuccessfully to the New Jersey Supreme Court for certification. *See State v. Ross*, 124 A.3d 239, 239 (N.J. 2015) (table).

### D. Ross's Post-Conviction State-Court Collateral Challenges

Ross next attempted to collaterally challenge his conviction through a *pro se* application for post-conviction relief in the New Jersey Superior Court in Atlantic County. *See* N.J. Ct. R. 3:22-1. He asserted five claims of ineffective assistance of counsel – four against his trial counsel and one against his appellate counsel. His claim against his appellate counsel was for failing to adequately argue for a transfer to the plenary calendar.

Ross later filed a counseled brief. It incorporated his *pro se* arguments by reference, but it did not raise a claim of ineffective assistance of intake appellate counsel.

The Law Division of the New Jersey Superior Court rejected Ross's application for post-conviction relief. Its opinion acknowledged his claim for ineffective assistance of appellate counsel, but that opinion did not explain the basis for denying that claim.

Ross timely appealed that ruling. In so doing, he did not assert any challenge related to the placement of his initial direct appeal on the ESOA calendar. The Appellate Division rejected the arguments that Ross had presented and affirmed the denial of post-conviction relief. *See State v. Ross*, 2018 WL 2925426, at *4 (N.J. Super. Ct. App. Div. June 12, 2018) (per curiam). Ross then petitioned the New Jersey Supreme Court for certification, and that request was denied on January 18, 2019. *See State v. Ross*, 199 A.3d 1215, 1215 (N.J. 2019) (table).

### E. Ross's § 2254 Habeas Petition in District Court

After obtaining no relief from New Jersey's post-conviction review process, Ross invoked the subject-matter jurisdiction of the District Court through a *pro se* petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254(a). That petition raised seven claims, and two of them challenged issues associated with Ross's state-court direct appeal. The first of those two was the assertion that the ESOA panel's refusal to transfer his appeal to the plenary calendar violated his constitutional right to a direct appeal. The second was a contention that appellate counsel's performance was deficient because counsel did not do more to advocate for the transfer of the appeal to the plenary calendar. That challenge also argued that counsel's alleged deficient performance should be presumed prejudicial as "a complete breakdown of the adversarial process." Habeas Pet. 34 (App. 107). Ross's petition did not complain about the actions of intake appellate counsel, nor did it include as an exhibit the

7

case information statement that had the box checked for the ESOA calendar. In denying that petition on June 2, 2022, the District Court expressly considered and rejected the two claims related to Ross's state-court direct appeal. *See Ross v. Nogan*, 2022 WL 1802853, at *4–11, *20–21 (D.N.J. June 2, 2022).

Shortly afterward, on June 28, 2022, Ross, then represented by counsel, moved for relief from that judgment under Rule 60(b) of the Federal Rules of Civil Procedure. The crux of that motion challenged the conduct of intake appellate counsel in designating the appeal for the ESOA calendar. In addition, Ross argued that he was presumptively prejudiced under the standard in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). That motion also included the case information statement from Ross's direct appeal as an exhibit.

The District Court did not evaluate whether Ross's 60(b) motion constituted a second-or-successive habeas application, but it did address the claim of prejudice. In so doing, it concluded that *Flores-Ortega* did not apply because Ross's "counsel *did* file an appeal," and that consideration of the case information statement was improper. *See Ross v. Nogan*, 2023 WL 166698, at *5–7 (D.N.J. Jan. 12, 2023) (italicized text substituted for underlined text). Accordingly, the District Court denied his motion and refused a certificate of appealability. *See id.* at *7.

Within thirty days of that ruling, Ross filed a notice of appeal, and after granting a certificate of appealability, this Court has appellate jurisdiction over the District Court's orders denying habeas relief and denying his Rule 60(b) motion. *See* 28 U.S.C. §§ 1291, 2253; Fed. R. App. P. 4(a)(1)(A), (a)(4)(A)(vi).

## II. DISCUSSION

Federal habeas review of an incarcerated person's challenge to the state conviction that is the basis for imprisonment is a powerful protection of liberty. *See*

8

*Blackledge v. Allison*, 431 U.S. 63, 72 (1977) ("The writ of habeas corpus has played a great role in the history of human freedom. It has been the judicial method of lifting undue restraints upon personal liberty." (quoting *Price v. Johnston*, 334 U.S. 266, 269 (1948))). But several threshold requirements for habeas relief ensure that the writ is not used to disrupt comity between federal and state courts. *See Davila v. Davis*, 582 U.S. 521, 527–28 (2017). In this case, where a certificate of appealability has been granted, *see* 28 U.S.C. § 2253(c),[2] there are two applicable threshold issues.

First, the Antiterrorism and Effective Death Penalty Act of 1996, commonly abbreviated as 'AEDPA,' generally bars second or successive § 2254 habeas petitions. *See* Pub. L. No. 104-132, § 106, 110 Stat. 1214, 1220–21 (codified in relevant part at 28 U.S.C. § 2244(b)); *In re Rosado*, 7 F.4th 152, 156 (3d Cir. 2021). That jurisdictional bar applies to motions challenging the disposition of the initial habeas petition brought pursuant to Federal Rule of Civil Procedure 60(b). *See Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005). And in this appeal, Ross presents arguments pertinent only to the denial of his Rule 60(b) motion. Thus, if Ross's Rule 60(b) motion is a second-or-successive application, then it would be subject to dismissal on jurisdictional grounds. *See* 28 U.S.C. § 2244(b)(2)(A)–(B); *Burton v. Stewart*, 549 U.S. 147, 157 (2007) (per curiam).

Second, before a federal court may consider the merits of a § 2254 habeas petition, an inmate ordinarily must exhaust the state-court remedies for the claimed violation of federal law.

---

[2] *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a [certificate of appealability] has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."); *United States v. Doe*, 810 F.3d 132, 144 (3d Cir. 2015) ("[E]ven if we issued a defective [certificate of appealability], it would still give us jurisdiction over the appeal.").

*See* 28 U.S.C. § 2254(b)(1)(A); *see also id.* § 2254(b)(1)(B) (enumerating exceptions); *Granberry v. Greer*, 481 U.S. 129, 131 (1987) (explaining that § 2254 exhaustion is non-jurisdictional). Applied here, if Ross did not exhaust those remedies or is deemed to have exhausted those remedies only through procedural default, then his claims may be rejected without adjudicating them on their merits. *See Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 228 (3d Cir. 2017).

As explained below, Ross's petition clears the first threshold issue but fails the second.

### A. This Court Has Jurisdiction over Ross's Appeal of the Denial of His § 2254 Habeas Petition and Rule 60(b) Motion.

The general bar on second-or-successive § 2254 habeas applications does not foreclose a state prisoner from having "one chance to bring a federal habeas challenge to his conviction." *Banister v. Davis*, 590 U.S. 504, 509 (2020); *see also United States v. Santarelli*, 929 F.3d 95, 104–05 (3d Cir. 2019) (holding "that AEDPA ensures" a habeas petitioner "one full opportunity to seek collateral review" (quoting *Blystone v. Horn*, 664 F.3d 397, 413 (3d Cir. 2011) (internal quotation marks and citation omitted))). Under this Court's precedent, the one full opportunity to seek collateral review is not evaluated based on only the issuance of a final, appealable order by a District Court, but rather upon the exhaustion of appellate options or expiration of the time for appellate review with respect to the initial habeas petition. *See Santarelli*, 929 F.3d at 104–05.

As a point of reference, under that one-full-opportunity standard, a Rule 59(e) motion to alter or amend a habeas court's judgment is not considered a second or successive application. *See Banister*, 590 U.S. at 511. That is so because a Rule 59(e) motion must be filed within 28 days of the underlying judgment, and the timely filing of such a motion

resets the time to appeal the underlying judgment so that it runs from the date of resolution of the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *see also Banister*, 590 U.S. at 511. Since both the Rule 59(e) motion and the underlying judgment are potentially simultaneously reviewable on appeal, such a motion is considered a part of the petitioner's one full opportunity to seek collateral review. *See Banister*, 590 U.S. at 517 ("Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding.").

In contrast to Rule 59(e) motions, motions under Rule 60(b) to vacate or set aside a judgment – such as the one Ross filed in District Court – have longer time periods in which they may be filed. Some Rule 60(b) motions must be filed within a year of the underlying judgment. *See* Fed. R. Civ. P. 60(c)(1) (providing that deadline for Rule 60(b) motions filed under subsections (1), (2), and (3)). Other Rule 60(b) motions must be filed "within a reasonable time" after the judgment. *Id.* (providing that deadline for Rule 60(b) motions under subsections (4), (5), and (6)). In light of those time periods allowed for filing a Rule 60(b) motion, such a motion often "does not prevent the original habeas judgment from becoming final" but instead "seeks to set aside the already final judgment." *Blystone*, 664 F.3d at 413; *see also* Fed. R. App. P. 4(a)(1)(A) (allowing thirty days from entry of judgment in a civil case for filing a notice of appeal); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) (holding in the context of the denial of a habeas petition that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement"). So, when a Rule 60(b) motion with those attributes "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim *on the merits*," it is a second-or-successive habeas application subject to the AEDPA bar. *Gonzalez*, 545 U.S. at 531–32; *see also Blystone*, 664 F.3d at 413 ("[A] Rule 60(b) motion is, in substance, both a collateral attack on the first habeas judgment and a *new* collateral attack

11

on the underlying criminal judgment."); 28 U.S.C. § 2244(b)(2).

There is a scenario, however, in which a Rule 60(b) motion that challenges the disposition of a § 2254 petition on the merits does not constitute a second or successive application under this one-full-opportunity rule. *See Santarelli*, 929 F.3d at 105. The Federal Rules of Appellate Procedure have a provision for Rule 60(b) motions filed within the time permitted for filing a Rule 59 motion: Rule 60(b) motions filed within 28 days of the underlying judgment likewise reset the timeline for appealing the underlying judgment so that the appeal time runs from the date of resolution of the Rule 60(b) motion. *See* Fed. R. App. P. 4(a)(4)(A)(vi). Accordingly, like a Rule 59(e) motion, a Rule 60(b) motion filed within 28 days of the judgment "*suspends* the finality of the judgment by tolling the time for appeal" and merges with that judgment for appellate review. *Blystone*, 664 F.3d at 414; *see Banister*, 590 U.S. at 520; *see also Carter v. City of Alton*, 922 F.3d 824, 826 n.1 (7th Cir. 2019) (Barrett, J.) ("[T]he important question for categorizing [Rule 59(e) and 60(b)] motions is their timing."). A Rule 60(b) motion filed within that time period, therefore, does not implicate the concerns about finality, judicial economy, and piecemeal litigation that underlie the bar on second or successive applications as that bar allows for one full opportunity to exhaust appellate review of the initial petition. *See Banister*, 590 U.S. at 512; *Santarelli*, 929 F.3d at 105. In addition, because the same legal standards govern motions under Rule 59(e) and Rule 60(b), a Rule 60(b) motion filed within 28 days of the final judgment is "substantively interchangeable" with a Rule 59(e) motion. *Walker v. Astrue*, 593 F.3d 274, 279 (3d Cir. 2010). For these reasons, a Rule 60(b) motion filed within 28 days of the underlying judgment does not constitute a second or successive habeas application for purposes of AEDPA's bar.

Here, the judgment in Ross's federal habeas case was entered on June 2, 2022, and he filed his Rule 60(b) motion on

12

June 28, 2022.  Because he filed the Rule 60(b) motion within 28 days of the judgment, it is not a second or successive application subject to the AEDPA jurisdictional bar.

**B. Although Ross's Ineffective-Assistance-of-Counsel Claim Is Deemed Exhausted, It Is Barred by Procedural Default Because He Cannot Make the Requisite Showing of Prejudice.**

A habeas petitioner, such as Ross, who challenges his incarceration pursuant to a state-court judgment must exhaust the remedies available in state court by fairly presenting the state courts with an opportunity to consider challenges to that confinement based on federal law.  *See* 28 U.S.C. § 2254(b), (c).   To satisfy the fair-presentation requirement for exhaustion, a petitioner must notify the state courts of the "factual and legal substance" of his claim "in a manner that puts them on notice that a federal claim is being asserted." *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 389 (3d Cir. 2020) (quoting *Robinson v. Beard*, 762 F.3d 316, 328 (3d Cir. 2014)).  And to complete exhaustion, "[a] claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court." *Evans v. Ct. of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992).[3]

The ineffective-assistance-of-counsel claim that Ross raised in his Rule 60(b) motion related to the performance of

---

[3] Ross contended at oral argument that New Jersey "expressly waive[d] the [exhaustion] requirement," 28 U.S.C. § 2254(b)(3), because the state "admitted" in its brief opposing his habeas petition that all grounds for relief Ross raised in his habeas petition had been presented in some state or federal court.  But Ross first raised the claim that is relevant to this appeal in his *subsequent* Rule 60(b) motion, so New Jersey could not have expressly waived exhaustion as to this claim.

his intake appellate counsel is subject to that exhaustion requirement. *See Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110, 116 (3d Cir. 2015). Ross, however, did not exhaust that claim. In his initial post-conviction relief application, the only appellate ineffectiveness argument that he fairly presented was that his appellate counsel performed deficiently for failing to take more steps to advocate for transfer of the appeal to the plenary calendar. And after he was denied relief, Ross did not pursue that challenge through appeal. Because Ross did not raise a claim related to the initial placement of the direct appeal on the ESOA calendar, much less did he appeal the rejection of such a claim, he did not fairly present it to "each level of the state courts," including the highest court. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). Accordingly, as his counsel now concedes, Ross did not fairly present this challenge in state court, and it has not been formally exhausted.

Even so, Ross's claim may be deemed exhausted because he presently has no right under New Jersey law to litigate any claim for ineffective assistance of counsel in New Jersey court. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). He cannot seek additional direct review because the New Jersey Supreme Court rejected his petition for certification and the time for seeking reconsideration has expired. *See Ross*, 124 A.3d at 239 (rejecting Ross's petition for certification on direct review); *Cunningham v. Dep't of Civ. Serv.*, 350 A.2d 58, 59 (N.J. 1975) ("[A] challenge . . . terminate[s] with a denial of [a] petition for certification to [the New Jersey Supreme Court]."); N.J. Ct. R. 2:11-6(a)(1) (motions for reconsideration must be filed within ten days). Nor can he pursue an additional post-conviction challenge now. Here, in the absence of the recognition of a new, retroactive rule of constitutional law or newly discovered material evidence, such a challenge, which would be limited to a claim based on the performance of post-conviction-relief counsel, could be timely only if brought within one year of the denial of his first application for post-conviction relief, but that occurred on January 18, 2019. *See* N.J. Ct. R. 3:22-12(a)(2); *see also State*

*v. Szemple*, 252 A.3d 1029, 1039 (N.J. 2021). Consequently, while not exhausted in the conventional sense, Ross's claim of ineffective assistance of counsel is deemed exhausted. *See Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) ("In habeas, state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

When a habeas claim is deemed exhausted because of the unavailability of additional state-court review, the claim may still be subject to dismissal on procedural-default grounds.[4] *See Marsalis v. Pa. Dep't of Corr.*, 37 F.4th 885, 889 (3d Cir. 2022); *Whitney v. Horn*, 280 F.3d 240, 252 (3d Cir. 2002). A procedural default occurs when a state-court rule of procedure prevents additional consideration of the claim in state court on grounds that are both adequate for the court's decision and independent of the merits of the federal claim, such as when a claim has been waived or is time-barred. *See Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007), *as amended* (June 12, 2007); *see also, e.g.*, *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237 (3d Cir. 2017) (holding that a claim had been procedurally defaulted based on waiver); *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014) (holding that a claim had been procedurally defaulted based on a time-bar). Ordinarily, for procedural default, a state-court decision must contain a "plain statement" that its ruling rests on such an adequate and independent state-law ground. *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327–28 (1985)). But in the context of claims that are deemed exhausted by virtue of the unavailability of additional state-court review, no such

---

[4] In instances, such as this, where the claim is deemed exhausted only by resort to procedural default, procedural default does not function purely as an affirmative defense because it serves a basis for saving a claim from dismissal on exhaustion grounds, and it is a petitioner's burden at all stages to demonstrate exhaustion. *See DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005).

plain statement is required for procedural default. *See id.* at 263 n.9 ("Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Teague v. Lane*, 489 U.S. 288, 298 (1989). Because this Court has long recognized that the New Jersey rules of procedure that prevent Ross from filing an additional post-conviction challenge satisfy the independent-and-adequate standard, his claim is procedurally defaulted. *See Johnson v. Pinchak*, 392 F.3d 551, 563 (3d Cir. 2004).

Even still, a § 2254 habeas petitioner whose deemed-exhausted federal claims are subject to procedural default may litigate those claims if he can show both cause for the default and actual prejudice as a result of the underlying violation of federal law. *See Shinn v. Ramirez*, 596 U.S. 366, 379 (2022); *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir. 1992) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).[5] To show cause, a petitioner must produce an objective reason that prevented him from complying with the procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). The required showing of prejudice to overcome procedural default for a claim alleging ineffective assistance of counsel mirrors the standard of prejudice for the underlying ineffective-assistance-of-counsel claim. *See Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996)); *see also Leyva v. Williams*, 504 F.3d 357, 369 (3d Cir. 2007); *Whitney*, 280 F.3d at 261. Because both cause and prejudice are required for this exception, a court will not excuse procedural default if either is lacking. And here, where

---

[5] Because the record does not support a plausible claim of Ross's actual innocence, there is no reason to believe that his default could be excused under the other recognized exception to procedural default for a "fundamental miscarriage of justice." *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007); *see also Murray v. Carrier*, 477 U.S. 478, 497 (1986).

16

the merits and the supplemental briefing did not address the cause requirement, but the briefing did concentrate on the appropriate standard for prejudice, it is appropriate to evaluate only the prejudice prong. *Cf. Day v. McDonough*, 547 U.S. 198, 210–11 (2006).

Typically, claims of Sixth Amendment ineffective assistance of counsel are governed by the two-pronged, performance-and-prejudice framework articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the *Strickland* prejudice prong requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. But, in certain circumstances, usually related to the loss of an opportunity for additional process, the Supreme Court applies a different standard for prejudice: a reasonable probability that but for counsel's deficient performance, the petitioner would have availed himself of the foregone process. *See Flores-Ortega*, 528 U.S. at 484; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (requiring a petitioner to show a reasonable probability that but for counsel's errors, he would have chosen to go to trial rather than plead guilty); *Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (same for choosing to plead guilty rather than go to trial); *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 855–57 (3d Cir. 2017), *as amended* (July 18, 2017) (same for choosing a bench trial over a jury trial). In particular, with respect to a claimed loss of an appeal, the Supreme Court's decision in *Flores-Ortega* applies that standard of prejudice and pays no heed to the likely outcome of such an appeal. *Compare Flores-Ortega*, 528 U.S. at 484, *with Strickland*, 466 U.S. at 694.

Ross argues that the assessment of prejudice in connection with the alleged deficient performance of counsel in designating the appeal for the ESOA calendar should be evaluated under the *Flores-Ortega* standard as opposed to the *Strickland* standard. That argument lacks merit. The *Flores-Ortega* standard, as an exception to the general *Strickland*

17

standard, applies only when the entirety of direct appellate review has been rendered unavailable. *See Flores-Ortega*, 528 U.S. at 483 (explaining that the standard applied because there had been a "denial of the entire judicial proceeding"); *cf. Smith v. Robbins*, 528 U.S. 259, 285 (2000) (explaining that a claim for failure to file a merits brief on appeal was governed by *Strickland*); *United States v. Scripps*, 961 F.3d 626, 635 (3d Cir. 2020) (explaining that a claim for failure to raise an issue on appeal was governed by *Strickland*). Yet Ross had a direct appeal, and even on the ESOA calendar, he had the opportunity to transfer his appeal to the plenary calendar or to raise additional non-sentencing arguments. *See* N.J. Ct. R. 2:9-11; *Cabrera*, 175 F.3d at 308; *Marshall*, 2022 WL 1160968, at *2. Indeed, Ross attempted to transfer the appeal to the plenary calendar through a *pro se* motion. And at oral argument before the ESOA panel, Ross's appellate counsel not only advocated in favor of Ross's *pro se* motion but also raised the principal non-sentencing challenge that Ross indicated that he would have made in a plenary appeal: the contention that the trial court erred by denying his motion to withdraw his guilty plea. Although the ESOA panel did not grant those requests, that does not mean that appeal was unavailable to Ross – lack of success on direct appeal is distinct from a lack of a direct appeal. And here, where Ross received an opportunity for direct appellate review of his sentence that did not preclude challenges to his conviction, he was not denied appellate review in its entirety. Accordingly, the *Flores-Ortega* standard of prejudice does not apply to counsel's designation of a criminal appeal for New Jersey's ESOA calendar; instead, the *Strickland* standard applies.

Ross, however, does not argue that he satisfies the *Strickland* standard for prejudice. Nowhere does he contend that he would have prevailed on his direct appeal if it would have proceeded on the plenary calendar. *See United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000) (evaluating *Strickland* prejudice with respect to an appeal from the perspective of only likelihood of success on the appeal – not

18

overall likelihood of success on both the appeal and any subsequent remand).  And without being able to demonstrate the prejudice needed to excuse procedural default for his ineffective-assistance-of-counsel claim, that claim, while deemed exhausted, cannot succeed.

* * *

For the foregoing reasons, we will affirm the denial of Ross's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and the denial of his Rule 60(b) motion.